UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FARO TECHNOLOGIES INC.,

        **Plaintiff,**

-vs.-                                                                  Case No.: 6:06-cv-13-19-KRS

CIMCORE CORPORATION,
ROMER, INC., ROMER
CIMCORE INC., HEXAGON
HOLDINGS, INC., and
HEXAGON METROLOGY
NORTH AMERICA, a division of
HEXAGON AB,

        **Defendants.**
_____

## ORDER

This case comes before the Court on the following:

1. Motion and Memorandum in Support of Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc. for Lack of Capacity to be Sued, filed by Defendants on February 16, 2006; (Doc. No. 33);

2. Plaintiff's Opposition to Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc. for

       Lack of Capacity to be Sued, filed by Plaintiff on April 14, 2006; (Doc. No. 53);

3. Declaration of Daniel E. Brusco, Esq., in Support of Plaintiff, Faro Technologies, Inc.'s Opposition to Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc. for Lack of Capacity to be Sued, filed by Plaintiff on April 14, 2006; (Doc. No. 54);

4. Reply Memorandum of Defendants Romer, Inc., CimCore Corporation and Hexagon Holdings, Inc. in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction, filed by Defendants on May 2, 2006; (Doc. No. 66);

5. Declaration of Alison G. Naidech in Support of Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corp. for Lack of Personal Jurisdiction, filed by Defendants on May 2, 2006; (Doc. No. 67);

6. Declaration of Thomas Moran in Support of Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corp. for Lack of Personal Jurisdiction, filed by Defendants on May 2, 2006; (Doc. No. 68);

7. Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc. for Lack of Capacity to Be Sued, filed by Plaintiff on June 12, 2006; (Doc. No. 72);

    8.      Declaration of Daniel E. Bruso in Support of Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc. for Lack of Capacity to Be Sued, filed by Plaintiff on June 12, 2006; (Doc. No. 73); and

    9.      Request for Oral Argument, filed by Defendants on June 15, 2006. (Doc. No. 74).

**Background**

Plaintiff Faro Technologies, Inc., ("Faro") instituted the instant action against Defendants CimCore Corporation, Romer, Inc., Romer CimCore, Inc., Hexagon Holdings, Inc. and Hexagon Metrology North America on January 5, 2006, alleging violations of the Lanham Act and adding a common law claim for unfair competition. (*See generally* Doc. No. 1). Specifically, Faro alleges that Defendants have created and circulated a "white paper" – a document which purports to compare Defendants' products to Faro's – which contains multiple false, misleading, or inaccurate statements about Faro's products. (*See, e.g.*, *id.* at ¶¶ 11-13). Defendants and Faro are direct competitors who sell competing portable coordinate measuring machines ("CMMs"), devices which are used to measure the shape and volume of various objects. (*Id.* at ¶ 8). As the question before the Court involves the legal issue of whether the Court has personal jurisdiction over several of Defendants, the Court need not present the remaining factual allegations of Plaintiff's Complaint.

Defendants now move the Court to dismiss four of the named defendants on jurisdictional grounds. Defendants assert that two of the parties, Romer CimCore, Inc. and

.
.

Hexagon Metrology North America, lack the legal capacity to be sued under Florida law. (*See* Doc. No. 33-1, pp. 16-19).  Defendants further argue that two additional parties, CimCore Corporation, and Hexagon Holdings, Inc., must be dismissed because there is no basis for asserting personal jurisdiction over them. (*See id.* at pp. 4-16).  In response, Faro argues that the injurious actions of CimCore and Hexagon Holdings via its agents and subsidiaries demonstrate that the exercise of both general and specific jurisdiction is proper in the case at bar. (*See* Doc. No. 53, pp. 10-19).  Faro requests in the alternative that it be permitted further discovery if the Court determines Faro has not established that CimCore and Hexagon Holdings are not subject to personal jurisdiction in Florida. (*See id.* at pp. 19-20).

**Standard of Review**

The determination of personal jurisdiction over a non-resident defendant requires a two-part analysis. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990).  First, a court must consider the jurisdictional reach of the applicable state "long arm" statute.  *See id.* at 855.  If there is a basis for the assertion of personal jurisdiction under the state statute, the case proceeds to the second part of the analysis, determining whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Cable/Home Communication*, 902 F.2d at 855.  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident

defendant.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The plaintiff, the party seeking to invoke the court's jurisdiction, bears the burden of alleging sufficient material facts to establish the basis for exercising personal jurisdiction over the defendant and establishing that the exercise of such jurisdiction is proper.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam); *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 583 (M.D. Fla. 1991).  If the plaintiff alleges sufficient facts to initially support "long arm" jurisdiction over a non-resident defendant, the burden then shifts to the defendant opposing jurisdiction to make a *prima facie* showing of the inapplicability of the statute.  *Prentice*, 779 F.Supp. at 583. (internal citations omitted).  When a defendant raises a meritorious challenge to personal jurisdiction through affidavits, documents, or testimony, the burden then shifts back to the plaintiff to prove jurisdiction by affidavits, documents, testimony, or other competent proof. *See, e.g., Jet Charter Serv. Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990).  The plaintiff may not merely reiterate the allegations of the complaint.  *Prentice*, 779 F.Supp. at 583.  (citations omitted).  In the context of a motion to dismiss for lack of jurisdiction, a court must accept the uncontroverted allegations in the plaintiff's complaint as true and construe all reasonable inferences from any conflicting evidence in favor of the plaintiff. *See, e.g., Madara,* 916 F.2d at 1514 (citing *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir.1988)).

## Analysis

### A.  Request for Oral Argument

Defendants request a forty (40) minute hearing so that the Court may hear oral

arguments on the instant Motion to Dismiss. Oral arguments are not warranted in the case at bar. Both parties have been granted leave to file supplemental responses with additional evidentiary support for their respective submissions, and the Court finds that further time for argument would not serve to further elucidate the issues present in the instant case. For these reasons, Defendants' request for oral arguments is denied.

**B. Motion to Dismiss Hexagon Metrology North America and Romer CimCore, Inc.**

Faro has conceded in its memorandum in opposition that both Hexagon Metrology North America and Romer CimCore, Inc. lack the capacity to be sued in this case and thus should be dismissed from the instant action. (Doc. No. 53, p.2, n.2). Thus, the Motion to Dismiss Defendants Hexagon Metrology, North America and Romer CimCore, Inc. for lack of capacity to be sued is granted.

**C. Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation**

Florida's long arm statute, Section 48.193, Florida Statutes, provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > (b) Committing a tortious act within this state ...
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or

> not the claim arises from that activity [...]

Fla. Stat. § 48.193. Thus, a plaintiff can demonstrate jurisdiction under the long arm statute in either of two ways: (1) specific jurisdiction under § 48.193(1), where the plaintiff's claims must arise from tortious acts committed in Florida by the defendant or its agents, and (2) general jurisdiction under § 48.193(2), which, if demonstrated, has no such additional requirement. The plaintiff, however, must also demonstrate that exercising jurisdiction under either section of the long arm statute satisfies the Due Process Clause. *See International Shoe,* 326 U.S. at 316.

The Complaint in the instant case states that personal jurisdiction is proper over the non-resident Defendants because Defendants have "conducted business in Florida and/or have committed acts of false advertising and unfair competition in Florida." (Doc. No. 1-1, ¶ 7). Contrary to this assertion, Defendants have filed with their Motion to Dismiss a sworn declaration of William Gruber,[1] the President and Chief Executive Officer of Hexagon Holdings, Inc. (hereinafter "HHI") and a Director of CimCore Corporation (hereinafter "CimCore"). In it, Mr. Gruber denies that HHI and CimCore have any contacts with the State of Florida. He states, *inter alia*, that HHI does no business in Florida, has no agents in Florida, owns no property in Florida, and has never purposefully directed any activities towards the state or its residents. (*See* Doc. No. 33-2, ¶¶ 3-6). Mr. Gruber repeats these assertions with regard to CimCore. (*See id*. at ¶¶ 9-12). The Court finds that both HHI and CimCore have satisfied their burden of raising a meritorious challenge to the exercise of personal jurisdiction in the instant case. *See, e.g., Jet Charter*, 907 F.2d at 1112. Therefore,

---

[1]  *See generally* Doc. No. 33-2.

the burden shifts back to Plaintiff to provide affidavits, documents, testimony, or other competent proof supporting the exercise of jurisdiction over Defendants. *See, e.g., id.* The Court will address the arguments regarding each of the respective Defendants individually.

### 1. CimCore Corporation

Faro does not dispute Mr. Gruber's testimony that CimCore does not directly conduct business in the state. Rather, Faro argues that the Court has specific jurisdiction over CimCore because CimCore is directly causing injury to Faro in Florida.[2] Specifically, Faro argues that CimCore is one of the authors of the "white paper" which allegedly contains multiple false, misleading, or inaccurate statements about Faro's products. (*See* Doc. No. 53, p. 14). In response, CimCore argues that the evidence is clear that it is a dormant corporation which did not author the "white paper," and also that Faro has failed to support its allegations with competent evidence. (*See* Doc. No. 66, pp. 5-6). After careful consideration of the evidence, the Court finds that Faro has not met its burden of providing competent proof which demonstrates that the exercise of jurisdiction over CimCore comports with Florida's long arm jurisdiction statute.

While Faro is correct in its contention that CimCore's effort to characterize itself as a "dormant corporation" has little bearing on the question of whether it is subject to

---

[2] Faro does not attempt to demonstrate that this Court has general jurisdiction over CimCore. Thus, the issue of whether exercising jurisdiction over CimCore is proper boils down to Faro's ability to demonstrate that its claims must arise from tortious acts committed in Florida by CimCore or its agents. *See* Fla. Stat. § 48.193(1).

jurisdiction in Florida,[3] Faro has done little more than re-hash the allegations of the Complaint in its attempt to demonstrate competent proof supporting the exercise of jurisdiction over CimCore. Faro has produced a true and accurate copy of the "white paper" at issue in the instant case, and points out that the document indicates it was authored by "Romer CimCore." (*See* Doc. No. 54-2, Ex. A). Faro argues that this is direct evidence that both CimCore and a co-defendant, Romer, Inc., authored the document, as is Mr. Gruber's statement that "Romer CimCore" was a "shorthand" method of identifying both Romer, Inc. and CimCore in a "convenient form." (Doc. No. 33-2, ¶ 13). This evidence, Faro claims, demonstrates that CimCore is a co-author of the "white paper."

Faro's argument, however, is insufficient to overcome the numerous pieces of direct evidence presented by CimCore which demonstrate that CimCore is not a co-author of the "white paper." Thomas Moran, the President of Romer, Inc. testified in his sworn declaration that Romer, Inc. was the sole author and distributor of the "white paper" and that CimCore had no part in its creation or distribution. (Doc. No. 68-1, ¶¶ 3-4). Mr. Moran further testified regarding the use of the term "Romer CimCore" in the "white paper," stating that in that particular instance, the term "Romer CimCore" was meant as a trademark use and was not intended to identify CimCore. (Doc. No. 68-1, ¶ 5). Furthermore, while Mr. Gruber did state that the term "Romer CimCore" was sometimes used as a matter of convenience to identify both Romer, Inc. and CimCore at once, he stated in the same

---

[3]   Whether or not CimCore is now "dormant," Faro is correct in its assertion that tortious acts which have occurred outside of Florida which later cause injury within the state may provide a basis for *in personam* jurisdiction. *See, e.g., Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

sentence that at other times the term was intended to be "informal." (Doc. No. 33-2, ¶ 13). Thus, examining the Gruber declaration as a whole, the Court agrees with CimCore that Faro's attempt to construe Mr. Gruber's statement as an admission that the term "Romer CimCore" always refers both to Romer, Inc., and CimCore, is not well taken.

It is the plaintiff's burden to provide affidavits, documents, testimony, or other competent proof supporting the exercise of jurisdiction over a non-resident defendant. *See, e.g., Jet Charter*, 907 F.2d at 1112. Hence, as Faro has produced no evidence which refutes the testimony that CimCore did not co-author the "white paper," the Court finds that the exercise of personal jurisdiction over CimCore would be improper in the case at bar.

### 2. Hexagon Holdings, Inc. ("HHI")

Faro offers two agency-based arguments in support of its contention that HHI is subject to personal jurisdiction in the State of Florida. First, Faro argues that the Court has specific jurisdiction over HHI because HHI's agents, Romer, Inc. and CimCore, are committing a tortious act against Faro within the state. Secondly, Faro asserts that the Court has general jurisdiction over HHI based on the actions of its subsidiaries, Romer, Inc. and Brown & Sharpe, which are both agents of HHI subject to general jurisdiction in the state. Faro further argues that the exercise of jurisdiction over HHI is proper because Romer has admitted in the context of a California patent lawsuit that Romer and the Hexagon family of companies have a "close" relationship and argued in the context of that suit that Romer and Hexagon Metrology, AB, the parent company of HHI, should be treated as one entity for the purpose of seeking "lost profits" damages for patent infringement. (*See* Doc. No. 72). HHI responds that Faro's attempt to characterize Romer, Inc., Brown & Sharpe, and CimCore as

agents of HHI fails as a matter of law and is not supported by the facts. HHI further argues that the exercise of jurisdiction in the instant case would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Faro's agency-based arguments are not well taken and fail for at least two reasons. First, as stated earlier, Faro has not met its burden of offering competent proof that CimCore, HHI's alleged agent, authored the purportedly tortious "white paper."[4] Next, Faro has not met its burden of presenting sufficient evidence that Romer, Inc., Brown & Sharpe, or CimCore are acting as agents of HHI.

In Florida, a corporation may be subject to jurisdiction when it commits a tortious act or transacts business through its agents in the forum state, unless the agents are transacting business on their own account. *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1227 (M.D. Fla. 2000). If the evidence shows that the subsidiary company is merely an agent through which the parent company conducts business in the state, or the separate corporate status is a mere formality and the two companies exist *without any semblance of individual identity*, then the acts of the subsidiary will be viewed as those of the parent. *See, e.g., Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (emphasis added). "Under Florida law, an agency relationship has the following elements: 1.) the principal acknowledges that the agent will act for it; 2.) the agent accepts the undertaking; and 3.) the principal controls the actions of the agent." *Id.* The element of control is the critical factor in determining whether an agency relationship exists. *Id.* (citing *Parker v. Domino's Pizza, Inc.*, 629 So.2d 1026 (Fla. 4th DCA 1993)).

---

[4] *See supra* Section C-1 of the Analysis portion of the Court's Opinion.

In its Memorandum in Opposition, Faro argues that Mr. Gruber's testimony "clearly establishes" that Romer, Inc. and Brown & Sharpe are acting as HHI's agents.[5] In fact, quite the opposite is the case. Mr. Gruber testified that although the companies consulted with each other, he could not think of any instances where Romer, Inc. would need the permission or authorization of HHI before taking action. (*See* Doc. No. 67-2, pp. 23-24). In addition, Mr. Gruber stated that he did not believe HHI's approval was ever needed for any corporate activity taken by Romer, Inc. or Brown & Sharpe. (*See id.* at pp. 35-36). Mr. Gruber did not believe that HHI had control over the bank accounts of Romer, Inc. or Brown & Sharpe. (*See id.* at pp. 27-28, 29). Mr. Gruber further testified that while HHI, Brown & Sharpe, and Romer, Inc. share a common interest, are all "separate entities" that have "different business missions." (*See id.* at pp. 30-31). While Romer, Inc., CimCore, and Brown & Sharpe conduct sales, Mr. Gruber stated that HHI's sole interest was to file consolidated tax returns for the companies it owns. (*See id.* at pp. 31-32; Doc. No. 33-2).

Although Faro has established that HHI owns Romer, Inc., CimCore, and Brown & Sharpe,[6] and that Mr. Gruber is the President and CEO of HHI and Brown & Sharpe, and CEO of Romer, Inc.,[7] such facts are insufficient to establish the high degree of control

---

[5] The argument section of Faro's Memorandum in Opposition presents no argument that CimCore is an agent of Hexagon Holdings, Inc. (*See* Doc. No. 53, pp. 10-13).

[6] *See, e.g.,* Doc. No. 67-2, p. 25.

[7] *See, e.g.,* Doc. No. 54-3, pp. 6-8, 17.

Florida law requires in order to find an agency relationship exists.[8] Case law is clear that the party seeking to demonstrate an agency relationship must show a "very significant" degree of operational control over the subsidiary. *See Florida v. American Tobacco Co.,* 707 So. 2d 851, 855 (Fla. 4th DCA 1998). In fact, the parent must exercise control to such an extent that the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Id.; Vantage View, Inc. v. Bali East Dev. Corp.,* 421 So. 2d 728, 733 (Fla. 4th DCA 1982) (abrogated on other grounds) (quoting *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981)). Mr. Gruber's testimony reveals that in the instant action, this is not the case.

Furthermore, Faro's argument that HHI controls the advertising of its subsidiaries is insufficient to demonstrate the requisite level of operational control needed to show agency or satisfy the jurisdictional requirement of the "long arm" statute. Even assuming *arguendo* that HHI is the registered owner of informational internet websites which advertise Romer, Inc. and CimCore products and that Florida residents can access these websites, this is insufficient to establish personal jurisdiction over HHI. *See, e.g., Miller v. Berman et al.*, 289 F.Supp.2d 1327, 1335-36 (M.D. Fla. 2003) (maintenance of passive website insufficient); *General Cigar*, 205 F.Supp.2d at 1343-44 (presence of regular contact between

---

[8] *See, e.g., ENIC, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888, 890-92 (Fla. 5th DCA 2004) (demonstrating that the parent and subsidiary had some of the same executives and corporate directors and shared a close working relationship is insufficient to show agency without evidence of day-to-day control); *General Cigar Holdings, Inc. v. Altadis, S.A.,* 205 F.Supp.2d 1335, 1343-44 (S.D. Fla. 2002) (evidence of extensive contact, close working relationship, and some day-to-day control of parent over subsidiary insufficient to demonstrate agency because a showing of operational control is necessary to justify personal jurisdiction).

companies, overlapping duties between executives, and absence of independent marketing plan or strategic plan for subsidiary insufficient to demonstrate operational control). For these reasons, the Court finds that Faro has not met its burden of demonstrating that CimCore, Romer, Inc., and Brown & Sharpe are agents of HHI.

Finally, Faro's argument that Romer's representations to a California federal court demonstrate that the exercise of jurisdiction over HHI in the instant case would be proper is not well taken. Faro has presented evidence demonstrating that in the context of a patent action in California, Romer argued that it had a "close" and "inextricably intertwined" business relationship with Hexagon Metrology, AB, the parent company of HHI. (*See* Doc. No. 73-2, pp. 4-5; Doc. No. 73-5). Mark Delaney, the Vice President and Chief Financial Officer of Romer, further testified via sworn declaration in the California action that Romer and the Hexagon family of companies "work in close concert with each other to market articulated CMMs worldwide." (Doc. No. 73-3, p. 4). Faro claims that these statements directly contradict HHI's statements in the instant case and demonstrate that this Court has personal jurisdiction over HHI.

None of the so-called "admissions" by Romer in the context of the California patent action "directly contradict" HHI's statements in the case at bar. Nor do they demonstrate that HHI or its agents have committed a tortious act in the state of Florida or that HHI is or has ever been a defendant who has engaged in substantial and not isolated activity within this state. Faro has likewise failed to present any evidence that HHI is involved in the sale, marketing, or distribution of CMMs in the state of Florida, and thus has failed to demonstrate the requirements of specific and general jurisdiction under sections 48.193(1) and (2) of the

Florida "long arm" statute.

In the instant case, Faro has not produced any evidence that HHI exercises operational control over its subsidiaries, directs the day-to-day activities of its subsidiaries, or that the separate corporate identities of its subsidiaries are a mere formality. It has also failed to produce sufficient evidence indicating that CimCore co-authored the "white paper." Thus, Faro has failed to establish that CimCore or HHI are subject to personal jurisdiction under Florida's "long arm" statute. As Faro has failed the first part of the two-step test, there is no need for the Court to consider whether exercising jurisdiction over HHI or CimCore would offend the Due Process Clause.

### D.  Additional Discovery

Faro requests additional time for discovery in the event it has failed to demonstrate facts sufficient to support personal jurisdiction over HHI. As this is a complex matter and the sole discovery conducted to date in the instant case was conducted pursuant to the California patent action, the Court will allow Faro sixty (60) days to seek information regarding the manner in which HHI and Romer work together to market CMMs worldwide and to file an Amended Complaint which alleges facts showing the jurisdiction of this Court to determine this action..

### **Conclusion**

Based on the foregoing, the Motion and Memorandum in Support of Defendants' Motion to Dismiss Hexagon Holdings, Inc. and CimCore Corporation for Lack of Personal Jurisdiction; and to Dismiss Hexagon Metrology North America and Romer CimCore, Inc.

for Lack of Capacity to be Sued, filed by Defendants on February 16, 2006, (Doc. No. 33), is **GRANTED**.  Plaintiff shall have sixty (60 ) days from the date of this Order in which to conduct discovery on the issue of the Court's jurisdiction to determine this matter and to file an Amended Complaint averring facts showing such jurisdiction.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _26th_ day of June, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record